**NOT FOR PUBLICATION**

[58]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
|                                     :
DIANA ARCAND and THOMAS              :
SHOOSMITH,                           :
on Behalf of Themselves and All Others :
Similarly Situated,                  :
                                     :   Civil Action No. 3:07-cv-4987 (FLW)
                                     :
                                     :
         Plaintiffs,                 :
                                     :
            v.                       :
                                     :          **OPINION**
BROTHER INTERNATIONAL               :
CORPORATION,                         :
                                     :
         Defendant.                  :
_____:

**WOLFSON, United States District Judge:**

Presently before the Court is a motion filed by Defendant Brother International

Corporation ("BIC"), pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all claims alleged in

the Second Amended Complaint (the "SAC") by Plaintiffs Diana Arcand ("Arcand") and

Thomas Shoosmith ("Shoosmith"), individually, and on behalf of a putative class of

consumers (collectively "Plaintiffs") who purchased Brother-brand toner cartridges within

the United States.  For the reasons that follow, the Court dismisses Plaintiffs' claims.

**I.  BACKGROUND**

   **A.  Procedural History**

1

Plaintiffs initially filed this putative class action on October 17, 2007, raising claims for unjust enrichment, fraudulent concealment, trespass to chattels, conversion and violations of the New Jersey Consumer Fraud Act ("NJCFA").  BIC twice moved to stay the proceedings pending resolution of similar actions filed in California, which motions were denied on August 27, 2008 and January 30, 2009, respectively.   Thereafter on February 9, 2009, BIC moved to dismiss Plaintiffs' Complaint and strike nationwide class allegations.  BIC's motion was terminated, however, following Plaintiffs' filing of the First Amended Complaint ("FAC") on February 27, 2009, which omitted Plaintiffs' unjust enrichment claim and added Plaintiff Shoosmith.

BIC again moved to dismiss Plaintiffs' claims and strike nationwide class allegations on March 16, 2009.  In a November 30, 2009 Opinion (the "November 2009 Opinion"), this Court held that the economic loss doctrine barred Plaintiffs' claims for trespass to chattels and conversion and dismissed those claims with prejudice.  With regard to Plaintiffs' fraudulent concealment and NJCFA claims, however, this Court held that while Plaintiffs claims, as pled, were deficient in that Plaintiffs had failed to plead ascertainable loss, as required by the NJCFA, and reasonable reliance, as required to plead fraudulent concealment, it would grant Plaintiffs twenty days in which to re-plead those claims to the extent that Plaintiff could plead the factual allegations necessary to address the deficiencies identified by the Court.[1]

_____

[1]     The Court applied New Jersey law to both Arcand's and Shoosmith's claims for the purposes of determining whether the NJCFA claims could withstand the motion to dismiss.  Although the Court recognized that a conflict of laws existed with regard to Arcand's consumer fraud claim given that she is a Virginia resident and the outcome of the consumer fraud claim would differ under the Virginia Consumer Protection Act, which precludes assertion of class action claims, the Court deferred its choice of law analysis on Arcand's NJCFA claim until the factual record is more fully developed.  In connection with

Plaintiffs filed a Second Amended Complaint on December 21, 2009, re-pleading the NJCFA and fraudulent concealment claims, adding new claims for breach of express warranty, aiding and abetting fraudulent concealment, and changing the class definition from "All persons . . . *who have purchased or leased a Brother laser printer*" to "All persons . . . *who have purchased a Brother-brand replacement toner cartridge within the United States*." BIC now moves pursuant to <u>Fed.R.Civ.P.</u> 12(f) to strike Plaintiffs' new claims as exceeding the scope of leave to amend granted by the Court in the November 30, 2009 Opinion and Order. Additionally, BIC seeks dismissal of the entirety of Plaintiffs' claims raised in the SAC pursuant to <u>Fed.R.Civ.P.</u> 12(b)(6).

**B.  Statement of Facts**

Because BIC moves pursuant to <u>Fed. Civ. R. P.</u> 12(b)(6) and (f), the following version of events assumes Plaintiffs' allegations in the SAC to be true. As in the FAC, Plaintiffs allege in the SAC that Defendant BIC, a Delaware corporation headquartered in Bridgewater, New Jersey, is a subsidiary of Brother Industries Ltd. ("BIL") and the authorized distributer and provider of customer support for Brother-brand laser printers and toner cartridges sold within the United States. SAC ¶ 12. Arcand, a Virginia resident, purchased a Brother HL-2040 laser printer and replacement Brother-brand toner cartridges distributed by BIC in Virginia. <u>Id.</u> ¶ 10. Shoosmith, a New Jersey resident, purchased a Brother HL-2070 laser printer and replacement Brother-brand toner cartridges distributed by BIC in New Jersey. <u>Id.</u> ¶ 11.

---

the instant motion to dismiss, the Court will again defer its analysis on the choice of law analysis and will limits its consideration to whether Plaintiffs' NJCFA claims can withstand attack under Rule 12(b)(6).

Brother-brand printers notify the user when the toner reaches a certain level.  SAC ¶ 45.  In this case, both Arcand's and Shoosmith's laser printers display a yellow LED light and a "Toner Life End" message when the toner reaches this level.  Id. ¶¶ 45-46.  According to the service manuals[2] for the models owned by Arcand and Shoosmith,[3] the toner cartridge is considered to be at life end when approximately forty-four grams of toner are remaining in the cartridge. Id. ¶ 73-74.  A new cartridge contains approximately 100 grams of toner.  Id.   Notwithstanding the fact that toner remains in the cartridge, the user manual explains that this light and message indicate that the printer has run out of toner. Id. ¶ 45.  The user manual also "strongly recommend[s]" that users not refill toner cartridges or purchase any toner cartridges other than "Genuine Brother Brand."  Id. ¶ 22. The  LED light and message indicating the end of toner life not only act as a warning but preclude the user from printing until the "empty" toner cartridge is replaced.  Id. ¶¶ 55, 65. According to Arcand and Shoosmith, they were unaware when they purchased the printer of this "forced shut-down mechanism," which causes the LED light to illuminate and to display an empty message when there is what Plaintiffs consider to be "a large amount of toner" remaining, thereby preventing them from using all the toner in the cartridges.  Id.

---

[2]         Because both the service and user manuals are explicitly relied upon in the SAC, the Court will consider the relevant portions of both.  See Arcand v. BIC, 673 F.Supp.2d 282, 291 (D.N.J. 2009) ("[A] court may consider documents that are 'integral to or explicitly relied upon in the complaint' without converting a motion to dismiss into a motion for summary judgment.") (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999)).

[3]         As indicated by the Plaintiffs, the service manual is only provided to authorized servicers of Brother-brand laser printers and is not available to the general public.  Id. at ¶ 72.  As with the Court's November 30, 2009 Opinion addressing Plaintiffs' allegations, the Court will again presume that Plaintiffs secured a copy of the service manual prior to filing the complaint given the references included therein.

¶¶ 60, 70.

## II. DISCUSSION

### A. MOTION TO STRIKE

As previously noted, in the November 2009 Opinion, this Court dismissed Plaintiffs' NJCFA and fraudulent concealment claims without prejudice.  Plaintiffs were granted twenty days within which to re-plead those claims to the extent Plaintiffs could plead factual allegations sufficient to satisfy the deficiencies noted by the Court.   BIC now moves to strike Plaintiffs' "new" claims as exceeding the scope of this Court's Order.  Specifically, BIC points to the fact that the SAC alleges NJCFA claims based upon new statutory violations and entirely new claims for aiding and abetting fraudulent concealment and breach of express warranty.

Pursuant to Fed.R.Civ.P. 12(f), a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation."  Receivables Purchasing Company, Inc. v. Engineering and Professional Services, Inc., No. 09-1339 (GEB), 2010 WL 3488135, * 2 (D.N.J. Aug. 30, 2010) (quoting Garlanger v. Verbeke, 223 F.Supp.2d 596, 609 (D.N.J. 2002)).  "[M]otions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"  Id.  "Rule 12(f) should be construed strictly against striking portions of the pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care."  Dicar, Inc. v.

Stafford Corrugated Products, Inc., No. 05-5426 (DMC), 2009 WL 1796053, * 3 (D.N.J.

2009) (quoting Morgan Home Fashions, Inc. v. UTI, United States, Inc., 03-772 (JLL), 2004

WL 1950370, at * 8 (D.N.J. Feb. 9, 2004)).

In U.F.C.W. Local 56 Health and Welfare Fund v. J.D.'s Market, 240 F.R.D. 149,

154 (D.N.J. 2007), the court considered whether to strike counts in a complaint which

exceeded the scope of an allowed amendment and held:

> "[w]hile a motion to strike is 'generally viewed with disfavor and
> should b[e] used sparingly," . . . use of Rule 12(f) is appropriate
> here because to hold otherwise would be to essentially ignore
> Fed.R.Civ.P. 15(a) and the requirement that a plaintiff seek leave
> before amending its complaint.  Here, under Rule 15(a),
> Defendants must have an opportunity to argue that Plaintiffs'
> proposed amendments (1) would prejudice Defendants and (2)
> would be futile.  (Internal citations omitted).

Courts that have considered the issue in other circuits, however, have instead considered

the substance of the amendment and whether the defendant established prejudice in

determining whether to strike the amendment.  In Allen v. County of Los Angeles, No. 07-

102 (SH), 2009 WL 666449, * 2 (C.D.Cal. Mar. 12, 2009), one Central District of California

Court summarized that approach as follows:

> "Exceeding the scope of a court's leave to amend is not
> necessarily sufficient grounds for striking a pleading or portions
> thereof."  See, e.g., Sapiro v. Encompass Ins., 221 F.R.D. 513,
> 518 (N.D.Cal. 2004) (Patel, C.J.) (declining to strike complaint
> that had been amended without leave from the court); U.S. v.
> $159,880.00 in U.S. Currency, More or Less, 387 F.Supp.2d
> 1000, 1009 (S.D. Iowa 2005) (declining to strike amended
> answer that differed substantially from a proposed amended
> answer because defendants were not prejudiced); Samuel v.
> Rose's Stores, Ins., 907 F.Supp. 159, 162 (E.D.Va. 1995)
> (declining to strike amended complaint where no new causes of
> action were alleged and defendant did not argue prejudice).
> However, claims in an amended complaint may be stricken if
> they are "wholly specious" or cause prejudice to the defendants.

<u>Sapiro</u>, 221 F.R.D. at 518; <u>$159,880.00 in U.S. Currency</u>, 387
F.Supp.2d at 1009; <u>Samuel</u>, 907 F.Supp. at 169.

Plaintiffs contend that they have not exceeded the scope of their leave to amend in filing the SAC.  According to Plaintiffs, the new allegations address the concern this Court expressed in the November 2009 Opinion that the toner cartridges contained an explicit disclosure that they are subject to a maximum yield.  Plaintiffs contend that the new allegations demonstrate that Plaintiffs did not purchase a maximum page yield, as this Court previously found based upon the allegations in the FAC, "but instead purchased a toner cartridge and all of its contents."  Opp. Br. at 20 (citing SAC ¶¶ 23-40).  In short, Plaintiffs argue that the new allegations were necessary to address the questions raised in the November 2009 Opinion and to establish that their "objectively reasonable expectations about cartridge use, consistent with BIC's disclosures, had nothing to do with page yields and were certainly not subject to a maximum limit . . . ."  Opp. Br. at 20-21 (citing SAC ¶¶ 52-71).

Plaintiffs contend that the other new claims "respond to new developments in the case."  Specifically, Plaintiffs argue that new claims raised under the NJCFA were pled "as a direct result of BIC's argument that the 'up to' language in the user guide limited the Plaintiffs' rights to a maximum page yield."  Opp. Br. at 23.  According to Plaintiffs, the new theories of liability raised under the NJCFA were necessary to respond to BIC's contention that consumers' expectations are legally defined by language hidden in the user manual.  With respect to the express warranty claim, Plaintiffs contend that it was pled as a direct response to this Court's dismissal of Plaintiffs' trespass to chattels and conversion claims on the grounds that the economic loss doctrine barred recovery in tort for economic

7

losses for which Plaintiffs were entitled only by contract.  Opp. Br. at 22.  Similarly,

Plaintiffs argue that they could not have known when they commenced the litigation that

BIC would take the position that only BIL could be liable for the products BIC distributed.

Plaintiffs contend that they added the aiding and abetting fraud claim in the event that

BIC prevails in its "technical defense."

In seeking dismissal of the newly added claim, BIC relies primarily on the fact that

Plaintiffs have exceeded the scope of the grant for leave to amend.  While BIC asserts that

Plaintiffs would have "trouble" demonstrating that justice requires the grant of leave to

amend under Rule 15(a)(2), BIC asserts only Plaintiffs' "undue delay" and fails to identify

any prejudice caused by the delay.  While the Court is cognizant of the fact that the action

was initiated in 2007 and has yet to progress beyond the pleading stage, the Court finds

that in the absence of demonstrated prejudice to BIC, the Court will deny BIC's motion to

strike, permit the amendment and address the merits of Plaintiffs' new allegations in the

interest of judicial economy.

## B.  MOTION TO DISMISS

### 1.  Legal Standard

When reviewing a motion to dismiss on the pleadings, courts "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)

(citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard.

Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41,

45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the  assumption of truth." Id.  Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

2.   **New Jersey Consumer Fraud Act (NJCFA) Claims**

a.  **Ascertainable Loss**

9

"To state a cause of action under the [NJ]CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements - defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss." Parker v. Howmedica Osteonics Corp., No. 07-02400 (JLL), 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) (citing New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super 8, 13 (App. Div. 2003)).   In the November 2009 Opinion, the Court found that Plaintiffs had adequately pled unlawful conduct and causal nexus in the FAC.  With regard to Plaintiffs' ascertainable loss, however, I found the FAC deficient.  As the I explained in the November 2009 Opinion

> Generally, an ascertainable loss occurs "when a consumer receives less than what was promised." Union Ink Co., Inc. v. AT&T Corp., 352 N.J.Super 617, 646 (App. Div. 2002); Solo, 2007 WL 1237825, at *3 (quoting Miller v. American Family Publishers, 284 N.J.Super 67, 90-91 (N.J. Ch. 1995) ("'For their money, they received something less than, and different from, what they reasonably expected in view of defendant's presentations. That is all that is required to establish ascertainable loss . . . .").   The statute does not require that the loss be monetary nor that it must be plead beyond a reasonable degree of certainty. See Cox, 138 N.J. at 22 ("The Appellate Division majority suggests that because Cox did not spend money to repair or finish the work, he incurred no loss.  However, that interpretation of N.J.S.A. 56:8-19 runs contrary to the Act's clearly remedial purpose").  At the very least, a consumer must be able to quantify or measure what loss he has suffered or will suffer as a result of the unlawful conduct. Perkins v. DaimlerChrysler Corp., 383 N.J.Super 99, 106 (App. Div. 2006); Theidmann, 183 N.J. at 248 (finding that implicit in the term ascertainable is some modicum of measurability or quantity of what was lost due to the defendants' unlawful conduct).
>
> Plaintiffs' theory of ascertainable loss proceeds along a benefit-of-the-bargain analysis: in purchasing

BIC's printer cartridges, BIC sold them a product worth
considerably less than originally promised.  When
pleading a benefit-of-the-bargain loss, the plaintiff must
allege "the difference between the [product] she received
and the [product] as represented at purchase."  Romano v.
Galaxy Toyota, 399 N.J.Super. 470, 484 (App. Div. 2008).
The flaw in Plaintiffs' theory of loss is that Plaintiffs do
not allege why they believed that the toner's life was tied
to the amount of ink in the cartridge, leaving this Court to
speculate as to whether this expectation was objectively
reasonable, and more importantly, whether what
Plaintiffs received was ostensibly less than what BIC
promised.  What the Court can discern from Plaintiffs'
allegations and the relevant documents incorporated by
reference is that Plaintiffs were well aware, according to
the user manual, that the toner cartridges printed up to a
certain number of pages.  Plaintiffs do not allege what
they did receive, i.e., an amount of pages less than what
the manual stated, nor do they allege what spurred them
to believe that the printer and its cartridges were
supposed to produce _more_ than promised in the user
manual.  Thus, this Court cannot determine what loss, if
any, Plaintiffs sustained as they fail to allege in the
Complaint any particulars as to their own experiences
with BIC printers and cartridges.  That Plaintiffs
envisaged a toner cartridge which would last the life of the
ink does not engender an ascertainable loss.  Rather, the
loss must be within the objective expectations of the
consumer based on the representations made.

  The approach taken in Solo v. Bed, Bath & Beyond,
Inc., No. 06-1908 (SRC), 2007 WL 1237825 (D.N.J. Apr.
26, 2007), and Franulovic v. Coca-Cola Company, No. 07-
539 (RMB), 2007 WL 3166953 (D.N.J. Oct. 25, 2007),
proves instructive and convincing.  In Solo, the plaintiff
purchased what he believed to be 1000 thread count sheets
from defendant.  Upon learning that the sheets were of a
significantly lower thread count, approximately 492, the
plaintiff filed suit, claiming, inter alia, that the defendant
was in violation of the NJCFA.  In finding that the
plaintiff failed to sufficiently plead ascertainable loss, the
court stated:

   Plaintiff fails to specifically allege that
   what he did receive[] was of lesser value

than what was promised, i.e., that the sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase. Therefore, Plaintiff has failed to set forth either an out-of-pocket loss or a demonstration of loss in value sufficient to satisfy the ascertainable loss requirement. See Theidemann, 183 N.J. at 248 (The "certainty implicit in the concept of an 'ascertainable loss' is that [such loss] is quantifiable or measurable.").

Solo, 2007 WL 1237825 at *3. Similarly, in Franulovic, the consumers complained of a carbonated beverage which promised to help burn more calories than consumed, a claim they alleged was untrue and uncorroborated. In dismissing the plaintiffs' NJCFA claims, the court, primarily relying on the reasoning first expressed in Solo, held that the plaintiffs did not plead an ascertainable loss when they failed to allege facts pertinent to their own personal experiences with the product. Franulovic, 2007 WL 3166953, at *8-9, 11.

The Court disagrees with Plaintiffs that Solo and Franulovic are inapposite. Tasked with differentiating Solo and Franulovic, Plaintiffs resort to tautology, insisting they have sufficiently plead ascertainable loss without explaining why the Complaint does not suffer from the same pleading defects that proved fatal in Solo and Franulovic. In evaluating whether a plaintiff has suffered an ascertainable loss, the Court need not countenance "hypothetical or illusory" losses or the wholly subjective expectations of a consumer. Nevertheless, Plaintiffs' theory calls for exactly that, for this Court to credit Plaintiffs' bald allegations that when they purchased their printers and cartridges, they inexplicably expected to be able to print to the very last drop of toner, irrespective of BIC's explicit disclosure that the toner provides up to a certain number of pages. The value Plaintiffs have assigned to their purchases cannot be characterized as an objective expectation without more specificity. See Perkins, 383 N.J.Super. at 106.

12

Possibly recognizing that the Complaint fails to adequately plead ascertainable loss, Plaintiffs strain to limit this Court's attention to the printer's "Toner Life End" message without mention of the material representations BIC may have made on the packaging of the toner cartridges, the cartridges themselves, or in the user manual.   Focusing solely on the printer, Plaintiffs would have this Court believe that their expectation in receiving the full amount of toner is objectively justified and the page limit disclosures in the user manual, and presumably, on the toner cartridge packaging, are merely surplusage.  However, Plaintiffs fail to provide any explanation why these representations, the number of pages they <u>did</u> receive and the number of pages promised, can be decoupled from their claims of consumer fraud with respect to the printer's shutdown mechanism.  Given the underlying theory of Plaintiffs' case, that BIC's "razor-and-blades" business model operated in such a way as to force consumers to needlessly buy more toner cartridges, it is implausible for Plaintiffs to suggest that this Court not look to both the printer, its packaging and user manual, and the cartridges, and the representations made by both products, to determine whether the consumer has suffered an ascertainable loss.  Otherwise, under the approach proposed by Plaintiffs a consumer could attach his or her own subjective value to a product without reference to what was expected at the time of purchase by a reasonable consumer.

Finally, the Court rejects Plaintiffs' theory of ascertainable loss under the NJCFA.  At its core, the Act seeks to "protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services," <u>Fenwick v. Kay American Jeep, Inc.</u>, 136 N.J.Super. 114, 117 (App. Div. 1975), *rev'd on other grounds*, 72 N.J. 372 (1977), and over time, "the history of the Act is one of constant expansion of consumer protection." <u>Gennari</u>, 148 N.J. at 604. But the notion that the Act provides a windfall to consumers or should be interpreted in such a way as to run afoul of the adage that, a consumer is only entitled to what he pays for, is unsupported by the applicable case law and the corresponding legislative history. Any such approach would severely compromise the capacity of companies like BIC to operate and would place them in a Catch-22:

13

produce a printer cartridge without a page limit that
would permit a consumer to use all the toner, even where
this may lead to substandard printing and possibly expose
BIC to claims of defective design, or, on the other hand,
place an explicit page limit on its toner that ensures the
highest print quality only to find itself defending against
claims of fraudulent misrepresentation and false
advertising.   Certainly, this would be a much different
case if Plaintiffs received materially less than the amount
of pages specified in the user manual.  However, the facts
as they are alleged do not allow this Court to engage in
that inquiry.  As to this point, the Court shares the same
concerns expressed by Judge Easterbrook in <u>Schorsch v.
Hewlett-Packard Company</u>, 417 F.3d 748 (7th Cir. 2005):

> This may mean that plaintiffs lose (and
> quickly) across the board: no rule of law
> requires drum kits or toner cartridges or
> any other consumer product to last for any
> prescribed period.  If it would be lawful in
> Illinois for HP to fill cartridges with enough
> toner to last (on average) 3,000 pages, why
> would it not be lawful to include more toner
> (enough to <u>ensure</u> 3,000 pages of use) and
> then require replacement at that point,
> before the streaking and spotty output that
> marks the end of a cartridge's supply of
> toner? Consumers are better off with the
> second kind of cartridge than with the first.
> Much the same may be said for ink
> cartridges and drum kits.  If HP had
> promised that its toner cartridges would
> last for 3,500 pages, then used an EEPROM
> to shut them down after 3,000, Schorsch
> would have a better claim, but this does not
> appear to be the class's theory.

 Although Plaintiffs and the <u>Baggett</u> court are correct to
label this language <u>dicta</u>, Plaintiffs cannot escape the
<u>Schorsch</u> court's unflappable logic: in purchasing a product
that comes with an explicit disclaimer of its limits,
consumers cannot later complain that the product <u>should</u>
yield more than explicitly promised. It is undisputed that
BIC <u>could have</u>, without exposing itself to liability,
provided no more toner than absolutely necessary to print

a predetermined set of pages.  Holding otherwise yields a
perplexing and anomalous result -- providing legal redress
for consumer fraud against a defendant who provides its
consumers with a product that performs as exactly
advertised in its user manual.  Accordingly, the Court
finds that Plaintiffs fail to plead an ascertainable loss and
their NJCFA claim is dismissed.  However, since Plaintiffs
could potentially plead ascertainable loss by providing this
Court with factual allegations concerning their individual
experiences with their printers and the number of pages
they received, Plaintiffs shall have twenty days to file an
amended NJCFA claim.

Arcand v. BIC, 673 F.Supp.2d at 300-303 (footnotes omitted).

BIC again moves to dismiss Plaintiffs' NJCFA claim on the ground that Plaintiffs

have failed to allege ascertainable loss.  BIC argues that "Plaintiffs conclusively allege that

despite the page yield disclosures on the product, they were promised (1) cartridges that

would print more than 2,500 pages at 5% coverage and (2) cartridges that would 'utilize the

entire contents of the toner cartridge subject only to the limits of the physical properties of

toner" for printing.'"  Moving Br. at 14-15 (citing SAC ¶ 33).  BIC contends that without

factual support for those allegations, Plaintiffs' NJCFA claim must be dismissed.

Plaintiffs refute BIC's assertion that they purchased a maximum page yield when

they purchased the toner cartridges.  Plaintiffs argue that the cartridge packaging cites no

maximum page yield.  Plaintiffs point to the SAC, wherein they allege the following:

23.  BIC sells Brother-brand replacement toner cartridges
based on minimum page yields.  In a document entitled "Brother
Genuine Monochrome Toner Cartridge Testing Method for
Determining State Page Yield Based on ISO/IEC 19752
Standard" downloadable from
http://pub.brother.com/pub/com/iso_yield/mono_19752/declared_p
age_yield_iso19752_en.pdf, Brother explains how it determines
stated page yields based on testing utilizing the ISO/IEC 19752
standard.  That document provides on page 4:

15

> Employing statistical analysis and from the results of testing according to the method and conditions explained above, we calculate the minimum page yield with a confidence level lower limit estimated value of 90% and a value no greater than that is stated as the page yield.

> Thus, when page yields are stated on Brother-brand monochrome laser printer products, *they are minimum page yields – not maximum page yields.*

> 24.  Brother-brand replacement toner cartridges are sold in boxes that provide the minimum number of printed pages users can expect from each cartridge on the side of the box.  The toner cartridge boxes do not disclose the maximum number of printed pages a user can expect from each cartridge.  For example, the Brother-brand TN-350 toner cartridge (which is the replacement cartridge for both Arcand's HL-2040 laser printer and Shoosmith's HL-2070N laser printer) provides the following on the front and back panel of the box in approximately 6-point font:

> > "2500 PAGES @ 5% COVERAGE 2500 PAGES AVEC UNE COUVERTURE DE 5% 2500 PAGINAS COBERTURA DE 5%"

> There are no other disclosures on the toner cartridge box.

SAC ¶¶ 23, 24 (emphasis in original).  Plaintiffs concede, as they must, that the user manual for their printers set forth a page yield of "up to 2,500 A4 or Letter-size single-sided pages at 5% coverage", but argue that such statement cannot be interpreted as a maximum page yield.  According to Plaintiffs, such an interpretation would be directly contrary to the statement contained in the "Brother Genuine Monochrome Toner Cartridge Testimony Method for Determining State Page Yield Based on ISO/IEC 19752 Standard" document, which they assert sets forth minimum page yields.  SAC ¶ 29.  Further, Plaintiffs reason that "up to 2500" may not be interpreted as a maximum because

interpreting that language literally "means a range of 0 - 2500 pages, and thus the
statement cannot possibly serve as a proper disclaimer or limitation as to the number of
printed pages the cartridge purchaser will receive."  SAC ¶ 30.

Plaintiffs assert that they purchased cartridges "with disclosures indicating, what
can only be interpreted to be the *estimated minimum page yields* under certain conditions."
Opp. Br. at 8-9.  Plaintiffs argue that, in actuality, they "were not explicitly promised
anything by BIC."  Id. at 9, n.1.  Nevertheless, Plaintiffs contend that "the consumer
objectively expects, given the information provided on the box concerning minimum yield,
that the cartridge will print at least that number of pages but will continue printing until
the toner is *actually* empty - not an earlier arbitrary point when the cartridge still contains
44% of its toner."  Id. at 11 (emphasis in original).  Moreover, Plaintiffs contend that they
have no way of verifying the number of pages at 5% coverage they actually receive, and
that a consumer's expectations at purchase simply may not be framed in terms that no
consumer can verify.  Even using the rated page yield for the limited purpose of price
shopping, however, Plaintiffs argue that the consumer of BIC's toner cartridges is misled
"because he or she is buying a cartridge that secretly has a fixed life, while perhaps for the
same price at the same rated yield, the cartridges of some other manufacturers do not
interfere with the use of all of the toner and do not arbitrarily limit use."  Id. at 11.   In
sum, Plaintiffs allege in the SAC that

> Brother-brand cartridges are sold as containers of toner,
> not per-page print licenses.  The thing being purchased is a
> physical thing that purchasers own in totality.  By selling
> toner contained within a cartridge without adequately
> disclosing any limitation on its use, BIC is warranting to
> purchasers that they may utilize the entire contents of the
> toner cartridge subject only to the limits of the physical

17

properties of toner.  SAC ¶ 33.

Plaintiffs therefore identify their losses as the value of the toner that remained in the cartridge after the printer indicated that the cartridge was empty.

Plaintiffs' theory of ascertainable loss is flawed.  Plaintiffs assert that BIC sells the toner cartridges based on minimum page yields, yet the only arguable support for such assertion is found in the testing method for page yield posted on BIC's webpage (hereinafter, the "ISO Protocol").  Even accepting Plaintiffs' interpretation of the declared yield under the ISO Protocol, with which BIC takes issue, Plaintiffs have failed to allege that the cartridges that they actually purchased were indeed rated in accordance with that testing method.  Additionally, Plaintiffs fail to allege that they even read the ISO Protocol in connection with their purchases of replacement cartridges.   Moreover, the Court is unconvinced by Plaintiffs' assertion that the page limitations set forth in the user manual and on the cartridge packaging must be viewed as the minimum life expectancy of the cartridge.  Here, where both the user manual and the cartridge packaging promise "2,500 pages at 5% coverage", the Court finds no support for Plaintiffs' assertion that they reasonably believed that the identified page yield was only the minimum and that a greater yield was possible.  As BIC points out, "consumers who purchase a cartridge rated to print '2,500 pages at 5% coverage' cannot claim they have lost the 'benefit of their bargain' merely because that cartridge failed to print *more than* this rated life."  Reply Br. at 3-4 (emphasis in original).

Regardless of whether the identified page yield is viewed as a minimum or maximum, however, Plaintiffs' theory of ascertainable loss still falls flat.  Plaintiffs concede that they do not know how many pages they actually received.  Op. Br. at 21.  Accordingly,

18

even if the Court's accepts Plaintiffs' assertion that the declared page yield of "2,500 at 5% coverage" is a minimum, Plaintiffs have failed to allege facts supportive of a finding that they actually received less than was promised.  The Court does not suggest that Plaintiffs were required to plead their loss with precision, however, some indication of loss must be pled (e.g., that Plaintiffs' paper usage or timing of cartridge replacement indicate that they received less than the 2,500 page yield promised).   To find that Plaintiffs have adequately alleged ascertainable loss, this Court must accept Plaintiffs' assertion that what they actually purchased was the entire contents of the toner cartridge, rather than the declared page yield.  There is absolutely no basis, however, in the SAC upon which the Court can find Plaintiffs' expectations in this regard to be objectively reasonable.  Such a finding flies in the face of the representations that were actually made by BIC in the user manual and on the cartridge packaging concerning page yield.  The Court disagrees with Plaintiffs' assertion that they were not explicitly promised anything by BIC.

Ultimately, the same flaws present in the FAC regarding Plaintiffs' theory of loss remain in the SAC.  Plaintiffs have again failed to allege a factual basis that can support their assertion that it was reasonable for them to believe that the toner's life was tied to the amount of ink in the cartridge, and have failed to plead facts supportive of such an allegation.  In the absence of any allegations by Plaintiffs that they did not receive the 2,500 page yield promised, the Court can only reach the conclusion that Plaintiffs received precisely what they bargained for and, thus, have failed to assert ascertainable loss necessary to sustain an NJCFA claim.   Because the Court finds that Plaintiffs' NJCFA claim does not survive the instant motion to dismiss, the Court does not reach BIC's alternative argument that the economic loss doctrine bars Plaintiffs' NJCFA claim to the

extent it rests on the shutdown design of the toner cartridge.

### b. Plaintiffs' New Claims Involving Regulatory Violations Under the NJCFA

As was noted by this Court in the November 2009 Opinion, "[t]he NJCFA creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations." Arcand v. BIC, 673 F.Supp.2d at 296 (quoting Vukovich v. Haifa, No. 03-737 (FLW), 2007 WL 655597, at *9 (D.N.J. Feb. 27, 2007)).  In the FAC, Plaintiffs limited the NJCFA claim to the first category: BIC's affirmative act of misrepresenting that the cartridge was empty, when in fact unused toner remained.  Id. at 298.  In the SAC, however, Plaintiffs have additionally alleged "regulatory violations" which, Plaintiffs assert, "properly state claims for relief."  Opp. Br. at 24.   In Cox v. Sears Roebuck & Co., 138 N.J. 2, 18-19 (1994), the New Jersey Supreme Court explained what is meant by this third category of "unlawful conduct":

> The third category of unlawful acts consists of violations of specific regulations promulgated under the Act.  In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations.  The parties subject to the regulations are assumed to be familiar with them, so that any violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the Act.

(Internal citations and quotations omitted).  Accordingly, to fall within the third category of unlawful acts, it is clear that a plaintiff must allege "violations of specific regulations promulgated under the Act."  Id. (internal citation omitted).  "The administrative regulations adopted pursuant to the [NJCFA] spell out numerous selling or advertising practices in particular areas of consumer sales that are either required or prohibited."  Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 377 (1977) (citing N.J.A.C. 13:45A-2.1 *et*

*seq*.). Additionally, statutes have been enacted to supplement the NJCFA by establishing the standard for unlawful conduct in terms of the sale of specific types of goods.  See, e.g., Shelton v. Restaurant.Com Inc., No. 10-0824 (JAP), 2010 WL 2384923, * 2 (D.N.J. Jun. 15, 2010) ("New Jersey's Gift Certificate Act ("GCA") supplements the [NJ]CFA by establishing the standard for unlawful conduct in terms of gift certificates.") (citing N.J.S.A. 56:8-110)).

Here, however, Plaintiffs do not explain how its newly identified "regulatory" claims meet the requirement that they be promulgated by the Attorney General pursuant to her authority under the NJCFA.  The newly identified CFA violations are premised upon BIC's alleged violations of:

> (1) the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-15 ("TCCWNA") (SAC ¶¶ 32, 94) in connection with BIC's "burying in its 110-page printer user guide, in tiny print, language limiting the cartridge output to an amount up to 2,500 pages . . . because it infringes upon the legal right of a consumer to fully use the toner they purchased."  (Opp. Br. at 25-26);
>
> (2)  the Plain Language Act, N.J.S.A. 56:12-1 to 12 ("PLA") (SAC ¶ 31), in connection with BIC's purported placement of the page-yield disclosure in the user manual in type smaller than 10-point; and
>
> (3)  the New Jersey Administrative Code applicable to the packaging of containers, N.J.A.C. 13:47K-4.6, -4.7 (SAC ¶¶ 41-43) for the failure to place a "declaration of quantity" on toner cartridge boxes, which Plaintiffs interpret as requiring the number of grams of toner in the cartridge, rather than the number of cartridges in the box.

Plaintiffs do not allege that the statutory provisions identified (the TCCWNA and the PLA) are among those statutes that expressly supplement the NJCFA, nor do they allege that the labeling regulations identified (N.J.A.C. 13:47K-4.6, 4.7) are among those promulgated

by the Attorney General pursuant to the authority granted to her under N.J.S.A. 56:8-4.
See Stoecker v. Echevarria, 408 N.J. Super. 597, 624 (App.Div. 2009) (finding violation of
N.J.A.C. 11:5-6.1 did not provide basis for CFA claim because "[t]he regulation was not
adopted by the Attorney General pursuant to the CFA; it was adopted by the Real Estate
Commission pursuant to its rule-making powers in N.J.S.A. 45:15-16.49.").

The Court is not suggesting that violations of the foregoing statutory and regulatory
provisions may not be relied upon to trigger strict liability under the NJCFA.  Indeed,
courts have recognized that violations of statutory and regulatory provisions, enacted and
promulgated, respectively, outside the scope of the NJCFA may serve to trigger strict
liability under the NJCFA where the violation constitutes an affirmative act under the
NJCFA.  See Wozniak v. Pennella, 373 N.J. Super. 445, 456 (App.Div. 2004) (noting that
the trial court "properly found that defendant violated the [NJ]CFA through an affirmative
act; i.e. raising plaintiffs' rent in excess of limitations established by Clifton's rent control
ordinance."); Rogers v. Mezzina Family, L.L.C., No. L-3536-05, 2007 WL 3034338, * 2
(App.Div. Oct. 19, 2007) (same); but see Shinn v. Champion Mortgage Company, Inc., No.
09-0013 (WJM), 2010 WL 500410, * 7, n.4 (D.N.J. Feb. 5, 2010) (recognizing that "the
NJCFA is very broad and covers so many deceptive practices that they could not all be
enumerated" but finding violation of New Court Rules governing legal fees too tenuous to
support an NJCFA claim).  However, even had Plaintiffs pled the statutory and regulatory
violations as affirmative misrepresentations by BIC, it is unlikely that such claims could
support a finding of unlawful conduct by BIC.  Both the TCCWNA and PLA claims, for
instance, are premised on representations made in the user manual, which is neither
written nor distributed by BIC.

Nevertheless, the Court need not resolve whether Plaintiffs can indeed state a claim that BIC violated the TCCWNA, the PLA and New Jersey labeling laws sufficient to demonstrate violations of the NJCFA, because even assuming those provisions trigger strict liability, Plaintiffs have failed to adequately plead ascertainable loss necessary to sustain the claims.  Regardless of whether Plaintiffs' NJCFA claim is premised on affirmative misrepresentations or regulatory violations, Plaintiffs must still plead ascertainable loss to state the NJCFA claim.  Plaintiffs contend that it is "patently untrue" that ascertainable loss is a necessary component of the NJCFA claims based upon the alleged regulatory violations, citing McGarvey v. Penske Auto. Group, Inc., 639 F.Supp.2d 450, 458 (D.N.J. 2009) for the proposition that "Defendants may be held liable under the [Truth-in-Consumer Contract, Warranty and Notice Act], even if Plaintiffs have not incurred actual damages."  As BIC points out, however, the plaintiffs in McGarvey filed a claim under the TCCWNA independent of the NJCFA claim.  Because the TCCWNA authorizes consumers to sue for "a civil penalty of not less than $100 or for actual damages, or both", N.J.S.A. 56:12-17, the McGarvey court permitted the plaintiffs to pursue the TCCWNA claim even in the absence of actual damages.  Even where the unlawful conduct is based upon a regulatory violation, a plaintiff must still plead ascertainable loss to state a claim under the NJCFA.  See Cox v. Sears Roebuck & Co., 138 N.J. at 22 (noting that where plaintiff had demonstrated unlawful conduct consisting of violation of consumer fraud regulations "[t]he next question, then is whether plaintiff suffered any 'ascertainable loss," as contemplated by the [NJCFA].");  Burnham v. WMC Mortgage Corp., No. 07-6101 (JBS), 2010 WL 2560657, * 6 (D.N.J. Jun. 21, 2010) (holding that even assuming plaintiffs could seek relief under the NJCFA based upon a violation of the Truth in Lending Act,

23

claim warranted dismissal where plaintiffs failed to establish that they incurred any loss).

"In satisfying the pleading standard on a motion to dismiss, a plaintiff must allege in her complaint that she suffered an ascertainable loss, but need not provide evidence of the nature of the loss or the diminution in value as required in a summary judgment motion." Shelton v. Restaurant.Com.Inc., 2010 WL 2384923 at * 3. "[D]espite this low threshold, a plaintiff cannot simply rely on broad, conclusory allegations in their pleadings and a court need not countenance hypothetical or illusory losses or the wholly subjective expectations of a consumer." Id. (quotations omitted). As previously discussed at length, however, Plaintiffs have failed to satisfy this threshold with regard to their allegations that they suffered ascertainable loss in the form of valuable discarded toner. Plaintiffs have failed to set forth factual allegations supportive of a finding that they reasonably believed they were purchasing all of the toner in the cartridge, rather than the page yield identified in the user manual and cartridge packaging. Accordingly, Plaintiffs have failed to establish an NJCFA claim based upon the newly identified statutory and regulatory violations.

### 3. Fraudulent Concealment Claim

To plead fraudulent concealment claim in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). In the November 30, 2010 Opinion, this Court held that the Plaintiffs had failed to establish justifiable and reasonable reliance and resultant damages necessary to sustain their fraudulent concealment claim.

24

With respect to reliance, the Court found that Plaintiffs had failed to explain why it would be reasonable to rely on the printer's "empty" notification when the user manual clearly indicates that the cartridge only provides a predetermined number of pages. Arcand, 673 F.Supp.2d at 306.  The Court pointed out that given the statements in the user manual explaining that page yield rather than cartridge weight governed the life expectancy of the cartridge, Plaintiffs were well aware that the cartridge is not technically empty when the shutdown mechanism initiates.  Id.  Given the absence of any allegations in the FAC as to what representations, if any, were made on the toner cartridge or printer packaging, the Court permitted Plaintiffs to amend the Complaint to the extent that they could plead factual allegations supportive of their claim of reliance.  Id. at 306-07.

Additionally, for the same reasons why Plaintiffs had failed to plead an ascertainable loss under the NJCFA, the Court found Plaintiffs' fraudulent concealment claim deficient for its failure to adequately allege that they sustained damages flowing from BIC's purported fraudulent conduct, Specifically, the Court held

> The facts as they are alleged do not permit the Court to find that Plaintiffs suffered even a modicum of damages as a result of the shutdown mechanism.  Indeed, . . . it would not make much sense at all for this Court to hold BIC accountable for fraudulent concealment if BIC could, without exposing itself to liability, provide just enough ink to print the number of pages provided in the user manual. In that case, Plaintiffs would be in the same position as they were when the printer shut down with usable toner remaining in the cartridge, a cartridge that has reached the end of its life and satisfied the consumer's expectations.  See Schorsch, 417 F.3d at 751.  It only follows then that Plaintiffs, in purchasing new cartridges when their printers shut down, could not have relied on the "empty" indication message to their detriment if they received the number of pages specified in the user manual.

Id. at 306.  The Court then went on to distinguish <u>Knox v. Samsung Electronics, America,</u>
<u>Inc.</u>, No. 08-4308, 2009 WL 1810728, at *1 (D.N.J. June 25, 2009) and <u>Baggett v. Hewlett-</u>
<u>Packard Company</u>, 582 F.Supp.2d 1261 (C.D.Cal. 2007), upon which Plaintiffs relied,
noting that in both <u>Baggett</u> and <u>Knox</u>,[4]

> the printers' user manuals and other accompanying
> materials explicitly provided estimated page yields, i.e.
> an average number of pages a consumer could expect to
> receive.  Implicit in the concept of a printer's average
> page yield is the reasonable expectation that some
> cartridges will yield less while others more.
> Presumably, the shutdown mechanism in both <u>Baggett</u>
> and <u>Knox</u> limited users to a page yield below or just at
> the average number of pages, precluding the user from
> realizing a reasonable return, a number of pages slightly
> above the average indicated in the user manual.  Thus, it
> is perfectly sensible for both <u>Baggett</u> and <u>Knox</u> to find as
> they did, that more pages than the average would be
> within the reasonable expectations of the consumer.  <u>Id.</u>

In opposition to the motion to dismiss the fraudulent concealment claim in the SAC,
Plaintiffs rest on the arguments made in opposition to dismissal of the NJCFA claim:
namely, that they reasonably believed that their ownership of the toner cartridge entitled
them to use the entire cartridge contents rather than a specified page yield.  Opp. Br. at 33
(citing discussion addressing NJCFA claim).   However, this argument rises and falls on
Plaintiffs' assertion that they did not purchase a page yield.  This Court finds that the
allegations in the SAC do not support that assertion.  As with Plaintiffs' NJCFA claim,
Plaintiffs have again failed to allege a factual basis that can support their assertion that it

---

[4]As this Court noted in the November 2009 Opinion, although the <u>Baggett</u> court
originally accepted the plaintiff's allegation that an average page limit, rather than a
maximum page limit, was given, the Baggett court later dismissed the claim on summary
judgment after discovery revealed that the defendant had explicitly represented in its user
manual that its toner cartridges yield a maximum amount of pages.  <u>Baggett</u>, 2009 WL
3178066 at *3.

was reasonable for them to believe that the toner's life was tied to the amount of ink in the

cartridge.   Plaintiffs' fraudulent concealment claim cannot withstand the instant motion to

dismiss.

###### 4. Express Warranty Claim

Plaintiffs claim that "[t]he sale of toner in a cartridge by BIC constitutes an express

warranty that all of the toner contained in the cartridge may be used by the purchaser."

SAC ¶ 98.  Plaintiffs reason that BIC's statements regarding the page yield of "2500 @ 5%

COVERAGE" on the toner cartridge packaging and in the user manual represents the

minimum number of printable pages and that consumers therefore have a reasonable

expectation that they will be able to utilize the entire contents of the toner cartridge,

subject only to the limits of the physical properties of the toner.  SAC ¶ 100.

"Express warranties in New Jersey are governed by Article 2 of the state's Uniform

Commercial Code."  Henderson v. Volvo Cars of North America, LLC, No. 09-4146 (DMC),

2010 WL 2925913 at * 7 (D.N.J. Jul. 21, 2010) (citing N.J.S.A. 12A:2-101 *et seq*).  Section 2-

313 provides, in pertinent part:

> (1) Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the
> buyer which relates to the goods and becomes part of the basis of
> the bargain creates an express warranty that the goods shall
> conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of
> the bargain creates an express warranty that the goods shall
> conform to the description.

"To establish a breach of express warranty claim under New Jersey law a plaintiff 'must

allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing

therefrom; and (4) that the party stating the claim performed its own contractual

obligations.'" Cooper v. Samsung Esectronics America, Inc., 374 Fed. App'x 250, 253 (3d

Cir. 2010) (quoting Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007)).

     BIC argues, presuming the application of New Jersey law,[5] that Plaintiffs have not

sufficiently alleged a contract between the parties.  BIC reasons that only "sellers" can

create express warranties under N.J.S.A. § 12A:2-313 and argues that because it is not a

"seller" but, rather, a distributor of Brother-brand products, the express warranty

provisions of Section 2-313 do not apply.  Further BIC contends that even if it could be

considered a seller, the sale of the toner in cartridges cannot create an express warranty

that all of the toner in the cartridge is available for printing.  According to BIC, "a

cartridge is not an 'affirmation of fact or promise made by the seller which relates to the

goods and becomes part of the basis of the bargain.'" Moving Br. at 38 (quoting N.J.S.A. §

12A:2-313(1)(a) and SAC ¶¶ 8, 33, 98).

     As to the second element of Plaintiffs' warranty claim, BIC contends that Plaintiffs

have failed to allege a breach in light of the Limited Warranty given, which expressly

disclaimed all other warranties.  Moving Br. at 38.  BIC contends that the Limited

Warranty warranted only that toner cartridges will "be free from defect in materials and

workmanship" for the Warranty Period, which is "90 days from the original purchase date

or the rated life of consumable, whichever comes first." Id.  Because Plaintiffs do not allege

that the toner cartridges suffered from any defect in materials or workmanship, BIC

---

     [5]    BIC asserts that there is a conflict between New Jersey and Virginia law and
that if Virginia law applies, Arcand would be foreclosed from pursuing the warranty claim.
As noted in footnote 1, *supra,* the Court will defer its choice of law analysis and will limits
its consideration to whether Plaintiffs' claims can withstand attack under Rule 12(b)(6).

contends that Plaintiffs have not alleged a breach.  Similarly, BIC argues that Plaintiffs have failed to sufficiently plead the third and fourth elements of their warranty claim in that Plaintiffs have not adequately pled that the inability to print with all of the toner is an injury and Plaintiffs failed to comply with the requirement of the Limited Warranty that they report any defects to BIC's customer service hotline.  Id. at 38-39.

Setting aside BIC's argument that the express warranty provisions of Section 2-313(1) do not apply because it is not a seller and because any express warranties were limited to defects in materials and workmanship by the Limited Warranty,[6] it is clear that Plaintiffs cannot sustain their claim for the same reasons their NJCFA and fraudulent concealment claims fail.  Plaintiffs fail to plead factual allegations supportive of their assertion that they were purchasing the ability to use all of the toner in the cartridge, subject only to the physical properties of the toner.  As discussed at length in the context of Plaintiffs' fraud claims, BIC made no such representations.  The allegations in the Complaint support the opposite conclusion: that BIC affirmatively represented a page yield of 2,500 at 5%.  In the absence of any allegation from Plaintiffs that that is not what they received, Plaintiffs claims fail here as well.  Because the Court finds that Plaintiffs have failed to plead factual allegations supportive of a breach of express warranty and damages flowing therefrom, Plaintiffs' express warranty claims do not survive the instant motion.

### 5.  Aiding and Abetting Claim

The SAC alleges an "alternative" cause of action against BIC for aiding and abetting fraud.  Plaintiffs allege that to the extent that BIC argues that it may not be held liable for the actions of its parent BIL in designing the toner cartridges "to prevent purchasers from

---

[6]        The Court notes that facts related to the Limited Warranty have not been pled in the SAC.

utilizing a significant amount of the toner contained in the toner cartridges despite the fact that purchasers legally own that valuable toner," BIC may be held "liable as an aider and abettor in knowingly participating in the fraudulent concealment of BIL."  SAC ¶¶ 120-21.

"In order to state a claim for aiding and abetting fraud, a plaintiff must demonstrate the following: (1) the underlying fraud; (2) the defendant's knowledge of the fraud; and (3) substantial assistance or encouragement by the defendant in the fraud." Bachner + Co., Inc. v. White Rose Rood, Inc., No. 09-2640 (PGS), 2010 WL 3210689, * 6 (D.N.J. Aug. 11, 2010) (citing Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998)). Here, Plaintiffs do not make it past the first step because they have failed to adequately plead the underlying fraud.  As discussed at length, *supra*, Plaintiffs have failed to plead that they "legally own" the toner that remains in the cartridges in that they have failed to set forth factual allegations supportive of a finding that they reasonably believed they were purchasing all of the toner in the cartridge, rather than the page yield identified in the user manual and cartridge packaging.

## III. CONCLUSION

For the foregoing reasons, BIC's Motion to Dismiss Plaintiffs' SAC in its entirety is GRANTED.

Dated: September 29, 2010                             s/ Freda L. Wolfson
                                                      **United States District Judge**

30